UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

IN RE:

| | |
|---|---|
| Kim Ziegelmayer | Chapter 7 |
| Debtor | No. 17-11357 |

| | |
|---|---|
| Charles A. Pisaturo, Jr. Trustee, | A.P. No. |
| Plaintiff | |
| v. | |

Sunflower Real Estate, LLC
Kim Ziegelmayer and
Lynda L. Glynn,
       Defendants

## COMPLAINT FOR TURNOVER

Plaintiff, Charles A. Pisaturo, Trustee ("Trustee"), by and through his duly authorized counsel, brings this action pursuant to 11 U.S.C. §542 for turnover of assets by Kim Ziegelmayer, Sunflower Real Estate, LLC and Lynda L. Glynn and an accounting.

In support of this Complaint, the Trustee respectfully states:

## JURISDICTION & VENUE

1. This is an Adversary Proceeding brought by Plaintiff for turnover under section 542 of the United States Code (11 U.S.C. §101 et seq. "Bankruptcy Code").  The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157.

2. This adversary proceeding is a core proceeding. 28 U.S.C. §157(b)(2)(A)(E) and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1409.  The predicates for the relief requested herein are Sections 541 and 542 of the Bankruptcy Code.

## THE PARTIES

4. Plaintiff is the duly appointed Chapter 7 Trustee of Kim Ziegelmayer.

5. Defendant Kim Ziegelmayer is a Rhode Island resident who filed a petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 17-11357) on August 4, 2017. ("Debtor").

6. Defendant Sunflower Real Estate, LLC is a Rhode Island limited liability company, formed on or about October 21, 2014. ("Sunflower").

7. Defendant Lynda L. Glynn is a resident of Scituate, Rhode Island and has been the sole member of Sunflower since its formation ("Glynn").

## PROCEDURAL AND FACTUAL BACKGROUND

8. Glynn formed Sunflower at the direction of the Debtor.

9. The Debtor directed Glynn to form Sunflower so there would be a separate legal entity for the Debtor to start a new business venture with the intention of buying and flipping real estate.

10. The Debtor intentionally did not become a member of Sunflower to conceal her interest in Sunflower and the Sunflower assets and did not disclose any interest in Sunflower within her divorce proceeding and/or within her bankruptcy proceeding.

11. At all times relevant to this Complaint, Glynn was the only person with signature authority on the checking accounts of Sunflower, which accounts were maintained at Coventry Credit Union.

12. Upon information and belief, Debtor acquired $200,000 in October 2014 from a friend of the Debtor, Mr. Mauro Poletti, of New South Wales, Australia ("Poletti"), who wired said funds to Glynn's personal bank account.

13. Debtor directed Glynn to transfer the $200,000.00 from Glynn's personal account to the Sunflower checking account.

14. Debtor directed Glynn to sign packets of Sunflower checks "in blank" and to provide the signed checks to the Debtor.

15. The Debtor thereafter completed the pre-signed Sunflower checks and used them and the funds in the Sunflower accounts at her sole discretion, for among other things, the following:

    a) to pay herself monthly compensation of $2,500;

    b) to pay her bankruptcy attorney;

    c) to pay for her personal travel with her children to Arizona;

    d) to make transfers from Sunflower to herself totaling $68,825 from January 2017 through June 30, 2017;

    e) to pay certain of her personal living expenses;

    f) to pay her divorce attorney;

    g) to pay into a pension/retirement account in the Debtor's name at TD Ameritrade, in the amount of $6500.00;

    h) to pay for one or more automobiles owned by Sunflower which the Debtor used at her discretion and

    i) used the funds in the Sunflower bank accounts through the use of a debit card to pay for personal expenses.

16. At times relevant to this Complaint, the Debtor had access to the Sunflower bank accounts through the use of checks signed by Glynn in blank, a bank card and by using online access, including the ability to transfer funds between the savings and checking account. The Defendant used her online access to the Sunflower bank accounts to facilitate her use of Sunflower funds to or for her benefit.

17. The Debtor had full and complete discretion and authority over the issuance of checks and the use of the funds within Sunflower's bank accounts.

18. The Debtor used the Sunflower bank account funds for her personal and family use.

19. The Debtor delivered to Glynn a $50,000 check, made payable to cash and endorsed by Suzanne Ziegelmeyer (believed to be Debtor's mother) and then Debtor directed Glynn to deposit the funds into the Sunflower savings account.

20. The $50,000 was deposited into the Sunflower bank account, rather than Debtor's personal accounts, to conceal and protect the funds from Debtor's personal creditors in anticipation of Debtor filing bankruptcy.

21. At the direction of Debtor, Sunflower acquired title to several properties including property located at 334 Waterman Avenue, Smithfield, RI 02917 ("Waterman Ave").

22. Funds from the Sunflower account were used by Debtor to pay contractors Debtor hired and to rehabilitate and furnish the Waterman Ave property, at the direction of the Debtor.

23. The Waterman Ave. property is a duplex where Debtor has lived in one of the two units of the duplex <u>rent-free</u>, from approximately July 2016 to the present date.

24. Tenants have periodically occupied the second unit of the Waterman Ave. property and the tenants were instructed by Debtor to deliver the rent payments to the Debtor individually rather than to Sunflower.

25. The Debtor has not accounted to Sunflower for the rent payments she has received from tenants or paid those rents she collected to Sunflower.

26. The rent payments Debtor received from tenants were used by Debtor for her personal use and benefit.

27. The Debtor enjoys substantially all of the attributes of ownership of Sunflower and its assets, but for legal title, in an effort to maintain her lifestyle and shield the assets and income of Sunflower from the reach of her creditors.

28. The Debtor filed a voluntary chapter 7 bankruptcy petition in this Court on August 4, 2017 ("Petition Date").

29. On the Petition Date, the Debtor held an equitable and secret interest in Sunflower and in Sunflower's income and its assets.

30. The Debtor did not disclose in her schedules or statement of affairs filed in her bankruptcy case her interest in Sunflower, the Sunflower assets or <u>all</u> of her income derived from Sunflower (she did disclose on her bankruptcy schedule J income of $ 2400 per month as a consultant).

31. On or about October 5 and 16, 2018, the Debtor provided deposition testimony in a civil action pending in Providence County Superior Court in connection with a lawsuit brought by Poletti against Glynn, Sunflower and others alleging, among other things, breach of contract, fraud and conversion.

32. At her deposition held on October 5, 2018, the Debtor testified as follows at Page 32:

> Q. Is there a reason why you were not a member of the LLC?
> A. There were financial issues related to the divorce that prevented me from being a member of the company.
> Q. What were the financial issues?
> A. It was my plan to declare bankruptcy.

33. At her deposition, held on October 5, 2018, the Debtor further testified as follows at Page 35:

> Q. The circumstances you described with regard to the potential foreclosure and pending bankruptcy, is that what you're saying?
> A. I'm saying the pending bankruptcy.
> Q. Is there any other reason that you didn't become a member of the LLC?
> A. That was the sole reason.

34. The Debtor's interest in all of her income derived from Sunflower, her use of the apartment for free, the use of one or more vehicles for free and the use of Sunflower's cash and account receivables (rent) were property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

35. The Debtor's interest Sunflower and in the funds within the Sunflower bank accounts were and remain property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

36. The Debtor's interest in the Waterman Ave. real estate is property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

37. On August 4, 2017, the Debtor filed her bankruptcy petition, schedules and statement of financial affairs ("Doc #1") in the Chapter 7 Case under the pains and penalties of perjury.

38. The Debtor knowingly and fraudulently failed to disclose her interest in Sunflower, the Sunflower bank accounts, Sunflower income and the other Sunflower assets in Doc. # 1.

39. The Debtor knowingly and fraudulently failed to disclose her interest in real estate owned by Sunflower in Doc. # 1.

40. The Debtor knowingly and fraudulently failed to disclose her free rent arrangement, all of her Sunflower income, her use of rent income and the transfers from the Sunflower accounts to or for her benefit in Doc. #1.

41. The Debtor knew of her interest in the Sunflower real estate, income and assets and knowingly and fraudulently failed to disclose this information to the Trustee and creditors at her §341 meeting of creditors.

42. On or about September 26, 2017, Debtor directed Glynn to deliver to her a check made payable to Attorney Tudino, purporting to be the remainder of the funds on hand at that time in the Sunflower bank accounts, in the amount of $34,230.59 ("Check").

43. Glynn delivered the Check, drawn on the Sunflower account and made payable to Attorney Joseph Tudino of Providence, to Debtor.

44. Upon information and belief, Attorney Tudino represents Poletti.

45. Upon information and belief, the Check was delivered to Attorney Tudino and it was deposited by Attorney Tudino into a bank account in the name of the "MP Revocable Trust."

46. On December 8, 2017, an Order Discharging Debtor entered from this Court pursuant to 11 U.S.C. § 727(a) of the Bankruptcy Code ("Order").

47. The Plaintiff, her creditors and the U.S. Trustee were unaware of the Debtor's fraudulent disclosures and omissions until after the entry of the Order.

48. The U.S. Trustee filed a Complaint to revoke Debtor's discharge on 12/6/18 in Adversary Proceeding No. 18-01066 ("Complaint").

49. The Defendant and the U.S. Trustee entered into a Stipulation wherein the Debtor consented to the revocation of her discharge ("Stipulation").

50. This Court entered an order in AP 19-01066 approving the Stipulation and Debtor's discharge was revoked ("Revocation Order").

51. On information and belief, and subject to further discovery, Defendant Glynn used assets of Sunflower in order to obtain personal financing.

52. On information and belief, and subject to further discovery, Defendant Glynn owes Sunflower an amount to be determined by this Court, but believed to be approximately $100,000.00.

## CLAIMS FOR RELIEF

### COUNT I
### Declaratory Judgment, Turnover & Accounting
### (Debtor's Estate has an Equitable Interest in Sunflower)

53. The Trustee incorporates by reference the allegations contained in paragraphs 1-52 of this complaint as if fully rewritten herein.

54. Section 541 of the Bankruptcy Code provides, in pertinent part that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

55. Plaintiff, in his capacity as Chapter 7 Trustee of the Debtor, is entitled to a declaration of his rights with respect to the Debtor's legal and equitable interest and rights in the assets of Sunflower and any and all assets and distributions arising therefrom.

56. The Debtor's equitable interest in Sunflower makes it just and appropriate to deem the company and its assets as belonging to the Debtor's estate.

57. The assets of Sunflower, including but not limited to, real estate, cash, bank accounts, vehicles, accounts receivable and rental income, are assets of Debtor's estate pursuant to 11 U.S.C. § 541.

58. The Debtor has benefited from the control of and use of these previously undisclosed assets, titled in the name of Sunflower, at the expense of the creditors of this estate.

59. Section 542(a) of the United States Bankruptcy Code provides, in pertinent part:

   [A]n entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of [the Bankruptcy Code], … shall deliver to the trustee, and account for, such property or the value of such property….

60. Pursuant to 11 U.S.C. § 542(a), the Plaintiff is entitled to an accounting and the turnover of the assets of Sunflower to this estate.

61. The Sunflower assets should be turned over to the Trustee as assets of Debtor's estate and be liquidated and administered by the Trustee for the benefit of the creditors of the Debtor.

62. Glynn, the sole member of Sunflower, consents to the turnover of the Sunflower assets to the Trustee.

63. Equity requires turnover of the present assets in the name of Sunflower, a full accounting by the Debtor and full restitution to this estate from the Debtor for all Sunflower assets used by the Debtor or to or for her benefit, prior to the turnover.

### COUNT II
### (Against Defendant Glynn)

64. The Trustee incorporates by reference the allegations contained in paragraphs 1-63 of this complaint as if fully rewritten herein.

65. To the extent that Defendant Glynn utilized assets of Sunflower for her personal benefit, without authorization from and/or consideration paid to Sunflower, or owes any obligation to Sunflower, she is indebted to the bankruptcy estate for said assets and amounts.

66. Equity requires turnover of assets in the name of Sunflower, a full accounting by Glynn and full restitution to this estate from Glynn for all Sunflower assets used by Glynn, or to or for her benefit, or that she may owe to Sunflower, prior to the turnover.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Sunflower, Glynn and the Debtor as follows:

(a) Find that the assets of Sunflower are property of this estate pursuant to section 541 of the Bankruptcy Code;

(b) Find that the assets of Sunflower are to be immediately delivered, transferred and turned over to the Trustee by Sunflower, Glynn and the Debtor pursuant to section 542 of the Bankruptcy Code;

(c) Compelling a full and complete accounting by Sunflower, Glynn and Debtor of all Sunflower assets, including but not limited to, an accounting of all Sunflower income, expenses, disbursements and assets, from the inception of the entity to the present date as well as an accounting or all rents received by Debtor related to any tenant of Waterman Ave.;

(d) Full restitution to this Estate of all Sunflower funds or assets received by or transferred to or for the benefit of the Debtor and/or Glynn by Sunflower or to third parties at their individual or joint direction.;

(e) The imposition of a constructive trust upon any Sunflower assets, including the Waterman Ave property, income derived from Waterman Ave., cash, accounts receivable, vehicles and any and all other Sunflower assets transferred to or for the benefit of the Debtor and/or Glynn;

(f) Awarding the Trustee damages and prejudgment interest from the date on which any Sunflower assets were used, received or transferred to or for the benefit of the Debtor and/or Glynn;

(g) Awarding the Trustee all applicable attorney's fees, interest, costs and disbursements of this action and

(h) Granting the Trustee such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,<br>
Charles A. Pisaturo, Trustee<br>
By his attorney<br>
<br>
/s/ Peter J. Furness, Esq.<br>
Richardson, Harrington & Furness<br>
182 Waterman St.<br>
Providence, RI 02906<br>
(401) 273-9600<br>
Peter@rhf-lawri.com